1

2

3

4

5

6

7

8          IN THE UNITED STATES DISTRICT COURT

9          FOR THE EASTERN DISTRICT OF CALIFORNIA

10    KAMLESH BANGA,

11             Plaintiff,                      No. CIV S-08-1518 LKK EFB PS

12         vs.

13    ALLSTATE INSURANCE COMPANY
      and DOES 1 through 10 inclusive,        ORDER AND
14                                            FINDINGS AND RECOMMENDATIONS

               Defendants.

15    _____/

16

17         Presently pending for decision before this court are:  (1) the motion of defendant Allstate

18    Insurance Company to dismiss plaintiff's complaint, Dckt. No. 13; and (2) the motion of plaintiff

19    for leave to file a Second Amended Complaint, Dckt. No. 22.[1]  These matters were submitted for

20    decision on the papers.  Dckt. Nos. 16, 28.

21    I.  PROCEDURAL ISSUES

22         The following procedural matters require initial consideration.  After filing her original

23    complaint, and in response to defendant's motion to dismiss, plaintiff filed a First Amended

24    Complaint.  Dckt. No. 14.  The First Amended Complaint makes *de minimis* changes to the

25    _____

26         [1] This case, in which plaintiff is proceeding *in propria persona*, was referred to the
      undersigned pursuant to E. D. Cal. L. R. 72-302(c)(21), and 28 U.S.C. § 636(b)(1).

                                          1

1  original complaint (e.g., breaking larger paragraphs into subparts, dropping a dollar amount in

2  plaintiff's claim for punitive damages, and adding general references to the California Consumer

3  Credit Reporting Agencies Act), but is premised on the same factual allegations and causes of

4  action.  The court ordered that plaintiff's First Amended Complaint be disregarded pending the

5  court's decision on defendant's motion to dismiss, and directed plaintiff to file an opposition on

6  or before October 1, 2008.  Dckt. No. 15.  Two problems beset this order.  First, the order failed

7  to acknowledge plaintiff's right to file an amended complaint, "as a matter of course," prior to

8  being served with a responsive pleading.  *See* Fed. R. Civ. P. 15(a)(1)(A) (plaintiff may amend

9  her complaint "once as a matter of course before being served with a responsive pleading"), and

10  Rule 7(a) (motion to dismiss is not a responsive pleading for purposes of Rule 15(a)).  To correct

11  this problem, the portion of the October 1, 2008 Order that states the amended complaint will be

12  "disregarded" is vacated.

13         The second problem is that on October 6, 2008, plaintiff requested a ten-day extension of

14  time within which to file her opposition to defendant's motion to dismiss, Dckt. No. 22, and on

15  October 10, 2008, she filed her opposition, Dckt. No. 23, which is premised on her motion for

16  leave to file a Second Amended Complaint (together with her proposed Second Amended

17  Complaint), Dckt. No. 22.[2]  Given that Rule 15(a) permits the procedure that plaintiff followed,

18  simply amending her complaint as a "matter of course," apparently in an attempt to moot the

19  motion, and that she acted promptly to seek an extension of time following the court's order of

20  October 2, 2008, plaintiff's request for an additional ten days for filing her opposition to the

21  motion to dismiss is reasonable and is hereby granted.  *See* Fed. R. Civ. P. 6(b)(1)(B) ("the court

22  may, for good cause, extend the time . . . on motion made after the time has expired if the party

23  failed to act because of excusable neglect"); *Pioneer Inv. Services Co. v. Brunswick Assoc. Ltd.*

24  _____

25         [2]  Defendant filed oppositions to plaintiff's request for extension of time, Dckt. No. 21,
       and to plaintiff's motion for leave to file a Second Amended Complaint, Dckt. No. 24.  The court
       submitted for decision on the papers plaintiff's motion for leave to file a Second Amended

26  Complaint, to be decided in conjunction with defendant's motion to dismiss.  Dckt. No. 28.

1    *P'ship*, 507 U.S. 380, 391-392, 395 (1993) (in "determining what sorts of neglect will be

2    considered 'excusable,' . . . the determination is at bottom an equitable one, taking account of all

3    relevant circumstances surrounding the party's omission").  Accordingly, the time for filing

4    plaintiff's opposition is extended through the date that it was filed, October 10, 2009.

5    Additionally, her motion for leave to file a Second Amended Complaint, filed the same day,

6    shall be considered in conjunction with her opposition to the motion to dismiss.

7         Finally, the First Amended Complaint, which is substantively identical to plaintiff's

8    original complaint, shall be the operative complaint for purposes of evaluating the instant motion

9    to dismiss.

10   II. <u>DEFENDANT'S MOTION TO DISMISS</u>

11        A. <u>BACKGROUND</u>

12        Plaintiff's allegations rest on the fact that on September 8, 2006, defendant Allstate

13   Insurance Company ("Allstate"), upon renewing plaintiff's homeowner's policy, increased

14   plaintiff's premium from $1477 to $2124.  Plaintiff's principal allegation, pursuant to the Fair

15   Credit Reporting Act, 15 U.S.C. §§1681 *et seq*., is that Allstate took an "adverse action" in

16   underwriting plaintiff's renewal policy, based on information contained in a consumer report,

17   and without providing notice to plaintiff. [3]  Plaintiff alleges the same facts pursuant to her claim

18   under Cal. Bus. & Prof. Code § 17200.  Plaintiff seeks "economic, compensatory, exemplary and

19   punitive damages and all the relief as provided by law, attorney's fees if plaintiff retains an

20   attorney during the pendency of this action, equitable relief, [and] the costs and disbursements of

21   this action."  First Amended Complaint ("FAC"), at 4.

22        Defendant moves to dismiss for failure to state a claim, on the ground that plaintiff's

23   claims fail to provide a private right of action.

24   _____

25        [3] It appears that plaintiff is not a novice in filing cases pursuant to the Fair Credit Report
     Act.  *See, Banga v. World Savings and Loan Ass'n*, 2006 WL 1467967, 1 ) (Cal. App. 1st. Dist.
26   2006); *Banga v. Countrywide Home Loans*, 2007 WL 2999160, 1 (Cal. App. 1st. Dist. 2007).

B. <u>LEGAL STANDARDS</u>

On a motion to dismiss, the court construes the pleading in the light most favorable to plaintiff and resolves all doubts in plaintiff's favor. *Parks School of Business, Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). The complaint's factual allegations are accepted as true. *Church of Scientology of California v. Flynn*, 744 F.2d 694 (9th Cir. 1984). The court may, without converting a motion to dismiss into a motion for summary judgment, consider facts established by exhibits attached to the complaint. *Durning v. First Boston Corp.*, 815 F.2d 1265, 1267 (9th Cir. 1987); *United States v. Ritchie*, 342 F. 3d 903, 907-908 (9th Cir. 2003). The court may also consider facts which may be judicially noticed, *Mullis v. United States Bankruptcy Ct.*, 828 F.2d 1385, 1388 (9th Cir. 1987); and matters of public record, including pleadings, orders, and other papers filed with the court, *Mack v. South Bay Beer Distributors*, 798 F.2d 1279, 1282 (9th Cir. 1986).

To survive dismissal for failure to state a claim pursuant to Rule 12(b)(6), a complaint must contain more than a "formulaic recitation of the elements of a cause of action;" it must contain factual allegations sufficient to "raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 1965 (2007). "'The pleading must contain something more than a statement of facts that merely creates a suspicion of a legally cognizable right of action.'" *Id.*, quoting 5 C. Wright & A. Miller, *Federal Practice and Procedure* § 1216, pp. 235-236 (3d ed. 2004) (internal punctuation omitted). Rather, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Weber v. Department of Veterans Affairs*, 521 F.3d 1061, 1065 (9th Cir. 2008) (quoting *Bell*, at 127 S.Ct. at 1974). Factually unsupported claims framed as legal conclusions, and mere recitations of the legal elements of a claim, do not give rise to a cognizable claim for relief. *See Ashcroft v. Iqbal*, ___ U.S. ___, 129 S.Ct. 1937, 1951 (May 18, 2009) (citing *Twombly*, 550 U.S. at 555).

The court is mindful of plaintiff's *pro se* status. *Pro se* pleadings are held to a less stringent standard than those drafted by lawyers. *Haines v. Kerner*, 404 U.S. 519, 520-21

(1972).  Unless it is clear that no amendment can cure its defects, a *pro se* litigant is entitled to notice and an opportunity to amend the complaint before dismissal.  *Lopez v. Smith*, 203 F.3d 1122, 1127-28 (9th Cir. 2000) (en banc); *Noll v. Carlson*, 809 F.2d 1446, 1448 (9th Cir. 1987).  However, although the court has an obligation to construe the pleadings of a *pro se* litigant liberally, *Bretz v. Kelman*, 773 F.2d 1026, 1027 n.1 (9th Cir. 1985) (*en banc*), the court's liberal interpretation of a *pro se* complaint may not supply essential elements of a claim that are not plead.  *Pena v. Gardner*, 976 F.2d 469, 471 (9th Cir. 1992);  *Ivey v. Bd. of Regents of Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982).  Furthermore, "[t]he court is not required to accept legal conclusions cast in the form of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged."  *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754-55 (9th Cir. 1994).  Neither need the court accept unreasonable inferences, or unwarranted deductions of fact. *Western Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981).

C.  <u>DISCUSSION</u>

1.  <u>Fair Credit Reporting Act, 15 U.S.C. § 1681m</u>

Plaintiff's first cause of action alleges that Allstate "took an adverse action" by increasing her homeowner's policy premium based on information contained in a consumer report, and then "willfully failed to notify plaintiff of the adverse action."  FAC, at 3, ¶¶ 13, 14. Both matters are alleged to be in violation of 15 U.S.C. § 1681m of the Fair Credit Reporting Act ("FCRA").  Based on these allegations, plaintiff seeks damages pursuant to 15 U.S.C. § 1681n, which sets forth the parameters for assessing a consumer's actual and punitive damages based on willful noncompliance with the FCRA, as well as costs and attorney fees.

The only applicable provision of Section 1681m is subdivision "(a)," which sets forth the "[d]uties of users taking adverse actions on basis of information contained in consumer reports." An "adverse action" is defined to include "a denial or cancellation of, an increase in any charge for, or a reduction or other adverse or unfavorable change in the terms of coverage or amount of, any insurance, existing or applied for, in connection with the underwriting of insurance."  15

U.S.C. §1681a(k)(1)(B)(I).  The duties associated with taking an adverse action require that the "user" of consumer reports provide notice to the consumer of the adverse action and of the consumer's right to obtain a copy of the subject report and to dispute the report with the consumer reporting agency.  15 U.S.C. § 1681m(a).[4]

However, as defendant contends, there appears to be no federal private right of action pursuant to 15 U.S.C. § 1681m, based on the express preclusion of 15 U.S.C. § 1681m(h)(8).[5]

---

[4] 15 U.S.C. § 1681m(a) provides:

(a) Duties of users taking adverse actions on basis of information contained in consumer reports.  If any person takes any adverse action with respect to any consumer that is based in whole or in part on any information contained in a consumer report, the person shall--
(1)     provide oral, written, or electronic notice of the adverse action to the consumer;
(2)     provide to the consumer orally, in writing, or electronically--
        (A)     the name, address, and telephone number of the consumer reporting agency (including a toll-free telephone number established by the agency if the agency compiles and maintains files on consumers on a nationwide basis) that furnished the report to the person; and
        (B)     a statement that the consumer reporting agency did not make the decision to take the adverse action and is unable to provide the consumer the specific reasons why the adverse action was taken; and
(3)     provide to the consumer an oral, written, or electronic notice of the consumer's right--
        (A)     to obtain, under section 1681j of this title, a free copy of a consumer report on the consumer from the consumer reporting agency referred to in paragraph (2), which notice shall include an indication of the 60-day period under that section for obtaining such a copy; and
        (B)     to dispute, under section 1681i of this title, with a consumer reporting agency the accuracy or completeness of any information in a consumer report furnished by the agency.

[5] 15 U.S.C. § 1681m(h)(8) provides in full:

(8) Enforcement

(A) No civil actions.
Sections 1681n and 1681o of this title [pertaining to private civil remedies] shall not apply to any failure by any person to comply with this section.

1   *See Perry v. First Nat'l Bank*, 459 F.3d 816, 823 (7th Cir. 2006) ("The unambiguous language of

2   § 1681m(h)(8) demonstrates that Congress intended to preempt private causes of action to

3   enforce § 1681m"); *id.* at 822 ("every district court considering this issue – save one – has found

4   that 15 U.S.C. § 1681m(h)(8) bars private enforcement of § 1681m in its entirety").  Although

5   the Ninth Circuit has not addressed this issue, the majority of decisions by this Circuit's district

6   courts are consistent in concluding that Section 1681m provides no private cause of action.  *See,*

7   *e.g., Putkowski v. Irwin Home Equity Corp.*, 423 F. Supp.2d 1053, 1061-1062 (N.D. Cal. 2006)

8   ("§1681m(h)(8) . . . expressly provides that there is no private right of action for violations of

9   § 1681m") (citing, *inter alia*, *Phillips v. New Century Financial Corp.*, 2006 WL 517653, 4

10  (C.D. Cal. 2006) ("Congress eliminated the private right of action under section 1681m through

11  the passage of FACTA [Fair and Accurate Credit Transactions Act of 2003]"); *White v. E-Loan,*

12  *Inc.*, 409 F. Supp.2d 1183, 1184-1187 (N.D. Cal. 2006) (all private right of action under Section

13  1681m barred by Section 1681m(h)(8))); *see also Grab v. American Lawyers Co.,* 2007 WL

14  842045 (D. Hawai'i, 2007) (assuming without deciding that there is no private right of action

15  under Section 1681m, pursuant to retroactivity analysis); *Hogan v. PMI Mortg. Ins. Co.*, 2006

16  WL 1310461 (N.D. Cal. 2006) (same); *but see Kubbany v. Trans Union*, LLC, 2009 WL

17  1844344, 2 (N.D. Cal. 2009) (construed "use of 'section' instead of 'subsection' in

18  § 1681m(h)(8) was a drafting error," thus only private actions under § 1681m(h) are precluded).

19      The court is persuaded by the reasoning set out in this growing weight of authority and

20  concludes that plaintiff has no private right of action pursuant to 15 U.S.C. § 1681m.

21  Accordingly, the first cause of action in plaintiff's First Amended Complaint should be

22  dismissed with prejudice.

23  *////*

24

25      (B) Administrative enforcement.
    This section shall be enforced exclusively under section 1681s of this title by the
26  Federal agencies and officials identified in that section.

2.  <u>California Business & Professions Code § 17200</u>

Plaintiff's second cause of action alleges that "Allstate's failure to provide a notice of adverse action is an unlawful, unfair, fraudulent practice that constitutes unfair business practice under [California] Business and Professions Code Section 17200." FAC, at 4, ¶ 19.  Section 17200 of the California Business and Professions Code generally proscribes unfair business practices in California.[6]  The Ninth Circuit has made clear, however, that this statutory tort cause of action must be premised on an otherwise cognizable claim that defendant has violated a law, or engaged in conduct which is in inherently unscrupulous or injurious to the public.  As explained by the Ninth Circuit in *Glenn K. Jackson, Inc. v. Roe*, 273 F.3d 1192, 1203 (9th Cir. 2001):

> In *Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.*, 20 Cal.4th 163 [](1999), the court held that § 17200 "does not proscribe specific practices. Rather . . . it defines 'unfair competition' to include 'any unlawful, unfair or fraudulent business act or practice.' . . . Its coverage is 'sweeping, embracing anything that can properly be called a business practice and that at the same time is forbidden by law.' " *Id.* at 180 [].  The tort encompasses practices which offend established public policy or that are immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers.  *Podolsky v. First Healthcare Corp.*, 50 Cal. App. 4th 632 [] (1996).  The *Cel-Tech* Court warned, however, that the breadth of § 17200 does not give a plaintiff license to "plead around" the absolute bars to relief contained in other possible causes of action by recasting those causes of action as ones for unfair competition. *Cel-Tech* at 182 [].

Thus, in order to state a claim pursuant to § 17200, plaintiff must allege conduct that comes within the prohibition of the statute.  *Roe*, 273 F.3d at 1203.  As explained in *Webb v. Smart Document Solutions, LLC,* 499 F.3d 1078, 1082 (9th Cir. 2007), "[s]ection 17200 [] is a broad statute designed to remedy violations of *other* laws, both state and federal." *Id.* (emphasis

////

---

[6]  Cal. Bus. & Prof. Code § 17200 provides in full:  "As used in this chapter, unfair competition shall mean and include any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising and any act prohibited by Chapter 1 (commencing with Section 17500) of Part 3 of Division 7 of the Business and Professions Code."

added).[7]  *See also Textron Financial Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 118 Cal.App.4th 1061, 593-594 (2004), and cases cited therein (Section 17200 claim is not cognizable based upon conduct that otherwise fails to give rise to a private right of action under the state Unfair Insurance Practices Act).

Pursuant to these authorities, plaintiff does not state a claim under § 17200.  The only predicate claim she asserts is Section 1681m of the FCRA, for which there is no private right of action.  Accordingly, plaintiff fails to state a claim under Section 17200 and the second, and last, cause of action in plaintiff's First Amended Complaint must also be dismissed.

////

////

_____

[7] The *Webb* court relied  on the characterization of the statute provided by *People ex rel. Bill Lockyer v. Fremont Life Ins. Co.*, 104 Cal.App.4th 508, 515 (2002), which provides in pertinent part:

> With respect to the *unlawful* prong, virtually any state, federal or local law can serve as the predicate for an action under section 17200.  In essence, an action based on Business and Professions Code section 17200 to redress an unlawful business practice "borrows" violations of other laws and treats these violations, when committed pursuant to business activity, as unlawful practices independently actionable under section 17200 et seq. and subject to the distinct remedies provided thereunder.  The UCL [unfair competition law] remedies and penalties are cumulative to those imposed under the other laws.  ( [] § 17204.)

> As to the second prong, the California Supreme Court has not yet developed or approved a definition regarding what is *unfair* in the context of a UCL suit involving injury to consumers.  The court has cautioned that in deciding what is unfair, courts may not apply purely subjective notions of fairness.  This prong is intentionally broad, thus allowing courts maximum discretion to prohibit new schemes to defraud.  The unfairness prong has been employed to enjoin deceptive or sharp practices.  The court also has determined that unfair business practices include unconscionable provisions in standardized agreements.

> Finally, the *fraud* prong of section 17200 bears little resemblance to common law fraud or deception.  Under section 17200, the test is whether the public is likely to be deceived.  This means that a section 17200 violation, unlike common law fraud, can be shown even if no one was actually deceived, relied upon the fraudulent practice, or sustained any damage.

*Fremont Life*, 104 Cal.App.4th at 515-516 (citations and internal quotations omitted).

### 3. California Consumer Credit Reporting Agencies Act

Finally, although not presented as a separate cause of action, plaintiff alleges generally that defendant "willfully and knowingly violated plaintiff's rights" under the California Consumer Credit Reporting Agencies Act.  FAC, at 4; *see also id.* at 1 ("[t]his lawsuit involves the . . . California Consumer Credit Reporting Agencies Act ('CCCRA')").  Such general references fail to state a cause of action.

### D. DEFENDANT'S MOTION TO DISMISS MUST BE GRANTED

Based on the foregoing, this court finds that plaintiff's First Amended Complaint fails to state a cognizable claim against defendant Allstate.  Accordingly, defendant's motion to dismiss, Dckt. No. 13, should be granted.  However, for the reasons discussed below, the dismissal should be with leave to amend.

## III. PLAINTIFF'S MOTION FOR LEAVE TO FILE A SECOND AMENDED COMPLAINT

### A. BACKGROUND

Plaintiff seeks leave to file a Second Amended Complaint that adds the new factual allegation that "defendant Allstate falsely reported to a credit report agency that in the year of 2005, plaintiff had filed two fire claims."  Proposed Second Amended Complaint ("SAC"), at ¶ 15.  Plaintiff avers that she filed only filed one fire-related claim.  *Id*. at ¶ 10.  In her new proposed complaint,[8] plaintiff asserts the following legal claims: (1) "Violations of the Fair

---

[8] As set forth in the proposed Second Amended Complaint, the pertinent factual allegations are as follows:

¶ 9. [O]n October 30, 2000, Allstate issued a Deluxe Plus Homeowners Policy No. 0 27 668907 to Plaintiff.  On September 8, 2006, Allstate renewed plaintiff's homeowner's insurance policy and increased policy premium from $1477 to $2124.  Thereafter, Plaintiff contacted Allstate in writing and orally on numerous occasions to find out the reason about this excessive increase in her insurance premium but to no avail.

¶ 10.  Plaintiff then attempted to buy insurance from Farmers, Arrowhead Clarendon, and California State Automobile Association but she was unable to get insurance at the favorable rate; however, plaintiff did find out that her insurance premium was excessive because her credit report showed that she had filed two fire related claims in the year of 2005 as opposed to one.

1   Credit Reporting Act, Violations of California Consumer Credit Reporting Act;" (2) "Violations

2   of the Fair Credit Reporting Act, Violations of California Civil Code Section 1785.26(b)(c);" (3)

3   "Tortious Interference with Credit Expectancy;" (4) "Defamation;" (5) "Unfair Business

4   Practices Act, Disgorgement of Profits;" and (6) "Intentional Infliction of Emotional Distress."

5        B.  <u>LEGAL STANDARDS</u>

6        "Federal Rule of Civil Procedure 15(a) provides for the amendment of pleadings by leave

7   of court and notes that such leave "shall be freely given when justice so requires." Fed. R. Civ.

8   P. 15(a).  This rule is applied with "extreme liberality." *Eminence Capital, LLC v. Aspeon, Inc.*,

9   316 F.3d 1048, 1051 (9th Cir. 2003).  However, the grant or denial of a motion to amend is

10  committed to the discretion of the district court, and the court may decline to grant leave where

11  there is "any apparent or declared reason" for doing so.  *Foman v. Davis*, 371 U.S. 178, 182 []

12  (1962); *see also Lockman Found. v. Evangelical Alliance Mission*, 930 F.2d 764, 772 (9th Cir.

13  1991).  The Ninth Circuit has interpreted *Foman* as identifying "four factors relevant to whether

14

15  ¶ 11.  Plaintiff contacted credit reporting agency and received a copy of her credit report which indicated that Allstate had reported to credit reporting agency that in the year of 2005, plaintiff

16  had filed two fire loss claims.  Plaintiff contacted ChoicePoint and disputed that she had not filed two claims as it was listed on her credit report.  Credit reporting agency in turn contacted

17  Allstate to verify the disputed information.  Allstate informed that the information was correct. Credit reporting agency informed plaintiff that the information was accurate and it would not

18  amend the report but advised plaintiff that she could add a statement of dispute in her credit report.

19  ¶ 12.  On January 31, 2008, plaintiff went to Allstate's local office and asked for explanation why it had been reported to credit reporting agency that she had filed two claims.  She also

20  requested that this negative information should be removed promptly from her credit report because she was unable to buy insurance with other companies at the lower rate that she had

21  been paying Allstate since October 30, 2006.

22  ¶ 13.  On March 13, 2008, plaintiff once again attempted to purchase insurance from Farmers, California State Automobile Association and AIG Homeowners Insurance Program, but

23  unfortunately, Allstate failed to inform credit reporting agency of the correction as requested.  As a result, plaintiff was again prevented to buy new insurance at the lower rate based due to the

24  lower credit score and negative information existed in her credit report [sic].  Consequently, plaintiff suffered pecuniary loss in that she ended up continu[ing] to pay higher premium on her

25  insurance policy with Allstate.

26  SAC, at 2-3.

a motion for leave to amend pleadings should be denied:  undue delay, bad faith or dilatory motive, futility of amendment, and prejudice to the opposing party." *United States v. Webb*, 655 F.2d 977, 980 (9th Cir. 1981).  The enumerated factors are not of equal weight.  *Id.* (citing *Howey v. United States*, 481 F.2d 1187 (9th Cir. 1973)).  Rather, "[p]rejudice is the touchstone of the inquiry under rule 15(a)." *Eminence Capital*, 316 F.3d at 1052.  Absent prejudice, there is a presumption under Rule 15(a) in favor of granting leave to amend.  *Id.*  The party opposing leave to amend bears the burden of showing prejudice." *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 187 (9th Cir. 1987); *Serpa v. SBC Telecommunications, Inc.*,  318 F. Supp.2d 865, 870 (N.D. Cal. 2004).

   C.  <u>DISCUSSION</u>

      1.     <u>First Cause of Action:  "Violations of the Fair Credit Reporting Act,
             Violations of California Consumer Credit Reporting Act</u>"

   Plaintiff alleges only generally that "Allstate falsely reported to the credit reporting agency that in the year of 2005, plaintiff had filed two fire claims. . . .  Allstate's furnishing of this false and defamatory information to credit reporting agencies [] violated plaintiff's rights afforded to her under the Fair Credit Report Act (FCRA), 15 U.S.C. § 1681 et seq, and the California Consumer Credit Reporting Act."  SAC, at ¶ 15.

   Defendant identifies the pertinent provisions under the FCRA as:  (I) 15 U.S.C. § 1681s - 2(a), which requires that a furnisher of information to a consumer reporting agency ("CRA") provide accurate information; and (ii) 15 U.S.C. § 1681s-2(b), which sets forth the duties of a furnisher of information upon notice from a CRA that such information is disputed by a consumer.  As defendant points out, there is no private right of action under that section.

////

////

////

////

a.  <u>No Private Right of Action Pursuant to FCRA Section 1681-2(a)</u>

There is no private right of action under section 1681s-2(a).  *See* 15 U.S.C. §§ 1681s-2(c),[9] and 1681s-2(d);[10] *see also Gorman v. Wolpoff & Abramson, LLP,* 552 F.3d 1008, 1014 (9th Cir. 2009) ("[d]uties imposed on furnishers under subsection (a) are enforceable only by federal or state agencies") (citing *Nelson v. Chase Manhattan Mortgage Corp*., 282 F.3d 1057, 1060 (9th Cir. 2002) ("Congress limited the enforcement of the duties imposed by § 1681s-2(a) to governmental bodies")); *Marshall v. Swift River Academy, LLC*, 327 Fed.Appx. 13, 14 (9th Cir. 2009) ("we have at least twice specifically held that consumers may not maintain an action for violation of Section 1681s-2(a)") (citing *Gorman* and *Nelson*); *see also Krieg v. Allstate Financial Services*, 2007 WL2974065, *1 (9th Cir. Oct. 12, 2007) ("there is no private right of action for violations of 15 U.S.C. § 1681s-2(a)"); *accord, Pinson v. Equifax Credit Information Services, Inc.,* 316 Fed.Appx. 744, 751 (10th Cir. 2009) (section 1681s- 2(a) provides no private cause of action).

It is clear from these authorities that plaintiff's general allegations of Allstate failing to furnish accurate information to one or more consumer reporting agencies do not state a claim under Section 1681s-2(a).

////

---

[9]  15 U.S.C.  § 1681s-2(c) provides in pertinent part:

(c) Limitation on liability
Except as provided in section 1681s(c)(1)(B) of this title [authorizing a state to bring an action on behalf of its citizens], sections 1681n and 1681o of this title [authorizing private civil remedies] do not apply to any violation of – (1) subsection (a) of this section, including any regulations issued thereunder. . .

[10]  15 U.S.C.  § 1681s-2(d) provides in pertinent part:

(d) Limitation on enforcement
The provisions of law described in paragraphs (1) through (3) of subsection (c) of this section (other than with respect to the exception described in paragraph (2) of subsection (c) of this section) shall be enforced exclusively as provided under section 1681s of this title by the Federal agencies and officials and the State officials identified in section 1681s of this title.

b.  <u>Claim Stated Pursuant to FCRA Section 1681s-2(b)</u>

However, another provision of this statute, § 1681s-2(b), does create a private right of action.  To state a claim under section 1681s-2(b), plaintiff must allege that she notified the credit reporting agency of her dispute, that the credit reporting agency investigated and found plaintiff's claim valid, and that Allstate nonetheless continued to rely on or provide the allegedly inaccurate information.  *See Nelson v. Chase Manhattan Mortgage Corp.*, 282 F.3d at 1060;[11] cited with approval in *Gorman*, 552 F.3d at 1014.  "There is only a private right of action to enforce 15 U.S.C. § 1681s-2(b), and that right is triggered only when a furnisher of information receives notice of a dispute from a credit reporting agency that has itself received notice of a dispute from a consumer." *Pineda v. GMAC Mortg., LLC*, 2009 WL 1202885, 4 (C.D. Cal. 2009) (citing *Gorman*, 552 F.3d at 1014); *See also, Krieg,* 2007 WL2974065, at 1;[12] *Roybal v. Equifax*, ////

---

[11]  The *Nelson* court adopted the argument presented therein by amicus Federal Trade Commission:

It can be inferred from the structure of the statute that Congress did not want furnishers of credit information exposed to suit by any and every consumer dissatisfied with the credit information furnished.  Hence, Congress limited the enforcement of the duties imposed by § 1681s-2(a) to governmental bodies.  But Congress did provide a filtering mechanism in § 1681s-2(b) by making the disputatious consumer notify a CRA and setting up the CRA to receive notice of the investigation by the furnisher.  *See* 15 U.S.C. § 1681i(a)(3) (allowing CRA to terminate reinvestigation of disputed item if CRA "reasonably determines that the dispute by the consumer is frivolous or irrelevant").  With this filter in place and opportunity for the furnisher to save itself from liability by taking the steps required by § 1681s-2(b), Congress put no limit on private enforcement under §§ 1681n & o.

*Nelson v. Chase Manhattan Mortgage Corp.*, *supra,* 282 F.3d at 1060.

[12]  The *Krieg* court found that the complaint "fails to state a claim because [plaintiff] did not allege that he gave proper notice to any credit reporting agency that he disputed the information furnished by defendant Allstate, that Allstate failed to investigate the dispute, or that Allstate continued to provide inaccurate information to any credit reporting agency." *Krieg v. Allstate Financial Services*, 2007 WL2974065, at 1.  "[T]he FCRA requires [the] consumer to 'filter' his complaint about inaccurate information through the credit reporting agency." *Id*. (citing *Nelson*, 282 F.3d at 1060).

1    405 F. Supp.2d 1177, 1180 (E.D. Cal. 2005)[13]; *Weseman v. Wells Fargo Home Mortg., Inc.*,

2    2009 WL 1270252, 3 (D. Or. 2009) ("for [plaintiff] to state a claim under the FCRA against

3    Wells Fargo as a furnisher of credit information, she must show that she contacted a CRA and

4    that the CRA, in turn, determined the claim was viable and contacted Wells Fargo, thereby

5    triggering Wells Fargo's duty to investigate"); *Peasley v. Verison Wireless LLC*, 364 F. Supp.2d

6    1198 (S.D. Cal. 2005) (direct notification to CRA, not furnisher, required for standing);

7    *Gonzalez v. Ocwen Financial Services, Inc.*, 2003 WL 23939563, *3 (N.D. Cal. Dec. 2, 2003)

8    (same).

9         Notwithstanding defendant's contentions to the contrary, plaintiff's proposed Second

10   Amended Complaint sets forth the essential elements of this cause of action.  She alleges that she

11   "contacted ChoicePoint and disputed that she had not filed two claims as it was listed on her

12   credit report.  Credit reporting agency in turn contacted Allstate to verify the disputed

13   information.  Allstate informed that the information was correct.  Credit reporting agency

14   informed plaintiff that the information was accurate and it would not amend the report but

15   advised plaintiff that she could add a statement of dispute in her credit report." *Id.*; FAC, at 12,

16   ¶ 11.  Thus, plaintiff alleges that she reported her dispute to a CRA, which in turn notified

17   Allstate, and Allstate unsatisfactorily responded that its previously furnished information was

18   accurate.  She also alleges that Allstate continued to rely on, and support the further

19   dissemination of, such information.  Necessarily implicit in these assertions is the allegation that

20   ////

---

22   [13] The *Roybal* court explained: "[A] private right of action against a furnisher of credit
     information exists only if the disputatious consumer notifies the CRAs in the first instance.  The
23   CRAs then have an obligation to investigate whether the claim is frivolous or irrelevant.  *See* 15
     U.S.C. § 1681i(a)(3).  Once a claim is deemed viable, the CRAs must contact the furnisher of the
24   credit information which affords an opportunity to investigate and rectify erroneous reports.  *See*
     15 U.S.C. § 1681s-2(b).  The furnisher's duty to investigate, however, does not arise unless it
25   receives notice of the dispute from the CRAs directly.  Bypassing the filter and contacting the
     furnisher of credit information directly does not actuate the furnisher's obligation to investigate
26   nor does it give rise to a private right of action. *See Nelson*, 282 F.3d at 1060."  *Roybal v.
     Equifax*, 405 F. Supp. 2d at 1180.

Allstate failed to meet its obligations under Section 1681s-2(b).[14]  As the Ninth Circuit stated in

*Gorman*, "the pertinent question is [] whether the furnisher's procedures were reasonable in light

of what it learned about the dispute from the description in the CRA's notice of dispute." 552

F.3d at 1017.  These procedures include a reasonable investigation pursuant to

§ 1681s-2(b)(1)(A).  *Drew v. Equifax Information Services*, LLC  2009 WL 595459, 8 (N.D. Cal.

2009) (citing *Gorman*).  Here, plaintiff's proposed Second Amended Complaint sets forth,

though implicitly, a *prima facie* claim pursuant to 15 U.S.C. § 1681s-2(b), based on defendant's

alleged failure to comply with the procedures therein.

c.  Claim Stated Pursuant to Cal. Civ. Code § 1785.25(a)

Although plaintiff only generally cites the California Consumer Credit Reporting Act

("CCRA") in her first cause of action, the state statutory basis for this claim is, as defendant

_____

[14]  15 U.S.C. § 1681s-2(b) provides:

(b) Duties of furnishers of information upon notice of dispute.

(1) In general.  After receiving notice pursuant to section 1681i(a)(2) of this title of a dispute with regard to the completeness or accuracy of any information provided by a person to a consumer reporting agency, the person shall--

(A)     conduct an investigation with respect to the disputed information;
(B)     review all relevant information provided by the consumer reporting agency pursuant to section 1681i(a)(2) of this title;
(C)     report the results of the investigation to the consumer reporting agency;
(D)     if the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the person furnished the information and that compile and maintain files on consumers on a nationwide basis; and
(E)     if an item of information disputed by a consumer is found to be inaccurate or incomplete or cannot be verified after any reinvestigation under paragraph (1), for purposes of reporting to a consumer reporting agency only, as appropriate, based on the results of the reinvestigation promptly-- (I) modify that item of information;  (ii) delete that item of information; or (iii) permanently block the reporting of that item of information.

(2) Deadline.  A person shall complete all investigations, reviews, and reports required under paragraph (1) regarding information provided by the person to a consumer reporting agency, before the expiration of the period under section 1681i(a)(1) of this title within which the consumer reporting agency is required to complete actions required by that section regarding that information.

1  notes, California Civil Code section 1785.25(a).  That statute provides:

2       A person shall not furnish information on a specific transaction or experience to
        any consumer credit reporting agency if the person knows or should know the
3       information is incomplete or inaccurate.

4  A furnisher of such improper information may be liable to the consumer for actual and punitive

5  damages, as well as injunctive relief, Cal. Civ. Code §1785.31, unless the furnisher can establish

6  that it nonetheless had in place reasonable procedures to comply with statute, *id*., at

7  § 1725.25(g).

8       Defendant contends that there is no private right of action pursuant to Cal. Civ. Code

9  § 1785.25(a).  However, following defendant's briefing in this case, the Ninth Circuit concluded

10  the opposite in *Gorman*, 552 F.3d at 1029-1032.  The court relied on the express language of 15

11  U.S.C. §1681t(b)(1)(F), which provides for the general preemption of state law claims on matters

12  that "require or prohibit" a matter regulated by Section 1681s-2, with the express exception of,

13  *inter alia*, Cal. Civ. Code § 1785.25(a).[15]  After rejecting several arguments that would support

14  defendant's position herein, the *Gorman* court concluded as follows:

15       Because the plain language of the preemption provision does not apply to private
        rights of action, and because the likely purpose of the express exclusion was
16       precisely to permit private enforcement of these provisions, we hold that the
        private right of action to enforce Cal. Civ. Code section 1785.25(a) is not
17       preempted by the FCRA.

18  *Gorman*, 552 F.3d at 1032; *accord, Sanai v. Saltz,* 170 Cal.App.4th 746, 776-778 (2d Dist.

19  2009).

20  ////

21

22       [15] 15 U.S.C. §1681t(b)(1)(F) provides:

23       No requirement or prohibition may be imposed under the laws of any State –
        (1) with respect to any subject matter regulated under--
24       . . . (F) section 1681s-2 of this title, relating to the responsibilities of persons who
        furnish information to consumer reporting agencies, except that this paragraph
25       shall not apply--
        . . . (ii) with respect to section 1785.25(a) of the California Civil Code (as in
26       effect on September 30, 1996).

1    The court therefore concludes that plaintiff has stated, again implicitly, in her proposed

2    Second Amended Complaint a claim under California Civil Code section 1785.25(a), based on

3    her allegation that Allstate furnished to a CRA information concerning plaintiff that Allstate

4    knew or should have known was inaccurate.

5            2.      Second Cause of Action:  "Violations of the Fair Credit Reporting Act,
                     Violations of California Civil Code Section 1785.26(b)(c)"
6

7    Plaintiff alleges that defendant failed to *notify* plaintiff, "pursuant to California Civil

8    Code Section 1785.26(b)(c) and the Fair Credit Reporting Act," that it had furnished negative

9    information about plaintiff to a CRA, and that defendant's actions were therefore "intentionally

10   deceptive and malicious."  SAC, at 4, ¶ 21.

11   As discussed in the context of plaintiff's First Amended Complaint, the notice

12   requirement set forth in the FCRA, at 15 U.S.C. § 1681m(a), does not create a private right of

13   action.  Rather, pursuant to 15 U.S.C. § 1681m(h)(8), enforcement lies solely with federal

14   agencies and officials.

15   Nor does it appear that plaintiff can state a "failure to notify" claim under state law.

16   Plaintiff relies on California Civil Code Sections 1785.26(b) and (c).  Section 1785.26(b)

17   authorizes a "creditor" to "submit negative credit information concerning a consumer to a

18   consumer credit reporting agency, only if the creditor notifies the consumer affected."

19   Subdivision (c) describes the timing and method of serving such notice to the consumer.[16]

20   _____

21       [16]  California Civil Code Section 1785.26 provides in part (emphasis added):

22       . . . (b) *A creditor may submit negative credit information concerning a consumer
         to a consumer credit reporting agency, only if the creditor notifies the consumer
         affected.*  After providing this notice, a creditor may submit additional
23       information to a credit reporting agency respecting the same transaction or
         extension of credit that gave rise to the original negative credit information
24       without providing additional notice.

25       (c) The notice shall be in writing and shall be delivered in person or mailed first
         class, postage prepaid, to the party's last known address, prior to or within 30 days
26       after the transmission of the negative credit information. . . .

1    However, defendant Allstate is not a "creditor," and these provisions do not appear to create

2    obligations for Allstate.  Rather, as defendant points out, the "notice" statute within the CCRA

3    that most closely conforms to plaintiff's instant challenge is California Civil Code Section

4    1785.20, which requires notification to the consumer for any adverse action based on a consumer

5    credit report.[17]  However, as defendant further notes, insurance companies are exempt from the

6    requirements of Section 1785.20.  *See* Cal. Insur. Code  § 791.01(f) ("Insurance institutions,

7    agents, insurance support organizations or any insurance transaction subject to this article shall

8    be exempt from . . . Sections 1785.20 and 1786.40 of, the Civil Code.).

9           The court therefore concludes that plaintiff may not state either a federal or state claim

10   based on defendant's alleged failure to notify plaintiff that it furnished negative information

11   about plaintiff to a CRA.  The second cause of action set forth in plaintiff's proposed Second

12   Amended Complaint therefore fails to state a cognizable claim.  Accordingly, leave to amend to

13   add this cause of action must be denied.

14          3.      Fifth Cause of Action:  "Unfair Business Practices Act, Disgorgement of
                     Profits"[18]

15

16          Plaintiff alleges that defendant's furnishing of inaccurate information, and failure to

17   notify plaintiff, constitute unfair business practices in violation of Cal. Bus. & Prof. Code

18   § 17200.  As discussed in the context of plaintiff's First Amended Complaint, a claim is

19   cognizable under this statute only if premised on a predicate violation of law, or conduct that is

20   inherently unscrupulous and injurious to the public.  Plaintiff asserts in her proposed Second

21   Amended Complaint that the predicate violation is premised on California Civil Code sections

22

23          [17]  California Civil Code Section 1785.20 sets forth the notice requirements triggered
24   "[i]If any person takes any adverse action with respect to any consumer, and the adverse action
     is based, in whole or in part, on any information contained in a consumer credit report."  Cal.
25   Civ. Code § 1785.20(a).

26          [18]  The court next addresses plaintiff's fifth cause of action, because the remainder of
     plaintiff's claims, based on state common law, are best analyzed together.

1785.26(b) and (c).  However, for the reasons previously stated, plaintiff does not state a claim

under this statute.  Nonetheless, based on the court's conclusions that plaintiff *has* stated prima

facie claims under 15 U.S.C. § 1681s-2(b), and California Civil Code section 1785.25(a),

plaintiff's Second Amended Complaint also states a claim, at least for pleading purposes, under

section 17200.

        4.     Third, Fourth, and Sixth Causes of Action:  State Common Law Claims

        Plaintiff asserts in her third, fourth, and sixth causes of action, respectively, the state

common law claims of "Tortuous Interference with Credit Expectancy," "Defamation," and

"Intentional Infliction of Emotional Distress."  SAC, at 4-7.  Assuming without deciding that

plaintiff's common law claims may be brought pursuant to § 1681h(e),[19] without preemption by

§ 1681t(b)(1)(F),[20] as recently assumed without decision by the Ninth Circuit in *Gorman v.*

*Wolpoff & Abramson, LLP*, 552 F.3d 1008,[21] the court analyzes each of plaintiff's common law

------

    [19]  15 U.S.C. § 1681h(e) provides (emphasis added):

Except as provided in sections 1681n [authorizing actual and punitive damages
for willful noncompliance]  and 1681o [authorizing actual damages for negligent
noncompliance] of this title, no consumer may bring any action or proceeding in
the nature of defamation, invasion of privacy, or negligence with respect to the
reporting of information against any consumer reporting agency, any user of
information, or any person who furnishes information to a consumer reporting
agency, based on information disclosed pursuant to section 1681g, 1681h, or
1681m of this title, or based on information disclosed by a user of a consumer
report to or for a consumer against whom the user has taken adverse action, based
in whole or in part on the report *except as to false information furnished with*
*malice or willful intent to injure such consumer.*

    [20]  15 U.S.C. § 1681t(b)(1)(F) provides in pertinent part:  "No requirement or prohibition
may be imposed under the laws of any State with respect to any subject matter regulated under
section 1681s-2 of this title, relating to the responsibilities of persons who furnish information to
consumer reporting agencies. . ."  *See* n. 13, *supra*, for full text.

    [21]  The Ninth Circuit recently made this assumption for purposes of analyzing a libel
claim in *Gorman*, concluding that it "need not decide this issue" because plaintiff had not
introduced sufficient evidence to survive summary judgment on this claim.  552 F.3d at 1027.
The court noted, however, that this "difficult issue" was one of first impression, and that
"[a]ttempting to reconcile the two sections has left district courts in disarray," *id.* at 1025, 1026.
*See also Llewellyn v. Shearson Financial Network, Inc.*, 622 F. Supp.2d 1062, 1069 (D. Colo.
2009) ("[t]he precise effect of § 1681t is, to be charitable, unclear") (citing *Gorman* and *Saint*

1    claims.

2               a.  "Tortious Interference with Credit Expectancy"

3        Citing only section 266B of the Restatement Second of Torts (tortuous interference with

4    contract, or with prospective economic advantage),[22] plaintiff alleges that Allstate owed a "duty

5    of care to plaintiff" that it "intentionally" "breached . . . by submitting a false statement to credit

6    reporting agencies," and that "[a]s a direct proximate result of Allstate's conduct, plaintiff had

7    and continues to be deprived to have a good credit standing and [] all the benefits that a good

8    credit standing offers," thus "tortuously interfer[ing] with her credit expectancy and []

9    undermin[ing] her creditworthiness, credit standing, and credit capacity among relatives, friends,

10   and in the public eye."  SAC, at ¶¶ 25, 26.

11        "The elements which a plaintiff must plead to state the cause of action for intentional

12   interference with contractual relations are (1) a valid contract between plaintiff and a third party;

13   (2) defendant's knowledge of this contract; (3) defendant's intentional acts designed to induce a

14   breach or disruption of the contractual relationship; (4) actual breach or disruption of the

15   contractual relationship; and (5) resulting damage."  *Pacific Gas & Electric Co. v. Bear Stearns*

16   *& Co.*, 50 Cal.3d 1118, 1126 (1990) (citations omitted).  "The tort of interference with

17   prospective economic advantage protects the same interest in stable economic relationships as

18   does the tort of interference with contract, though interference with prospective advantage does

19   not require proof of a legally binding contract.  The chief practical distinction between

20 ――――――――――――――――

21 *Torrance v. Firstar*, 529 F. Supp.2d 836, 841 (S.D. Ohio 2007) ("there have arisen four distinct and conflicting interpretive approaches attempting to harmonize the two provisions"); *but see,*

22 *Sanai v. Saltz*, 170 Cal.App.4th 746, 773 (2d Dist. 2009) ("15 U.S.C. § 1681t(b)(1)(F) totally preempts all state common law tort claims against furnishers of credit information arising from

23 conduct regulated by 15 U.S.C. § 1681s-2").

24      [22]  The Restatement Second of Torts, section 766B, provides:  "One who intentionally and improperly interferes with another's prospective contractual relation (except a contract to

25 marry) is subject to liability to the other for the pecuniary harm resulting from loss of the benefits of the relation, whether the interference consists of (a) inducing or otherwise causing a third person not to enter into or continue the prospective relation or (b) preventing the other from

26 acquiring or continuing the prospective relation."

interference with contract and interference with prospective economic advantage is that a

broader range of privilege to interfere is recognized when the relationship or economic

advantage interfered with is only prospective." *Id.* (citations and fn. omitted). "To prevail on a

cause of action for intentional interference with prospective economic advantage in California, a

plaintiff must plead and prove (1) an economic relationship between the plaintiff and some third

party, with the probability of future economic benefit to the plaintiff; (2) the defendant's

knowledge of the relationship; (3) the defendant's intentional acts designed to disrupt the

relationship; (4) actual disruption of the relationship; and (5) economic harm to the plaintiff

proximately caused by the defendant's acts." *Reeves v. Hanlon*, 33 Cal.4th 1140, 1152, n. 6

(2004) (citation omitted).

The elements required to state a *prima facie* claim under either of these causes of action

must also include the requirements that the subject information was both "false" and "furnished

with malice or willful intent to injure such consumer." 15 U.S.C. § 1681h(e).

While plaintiff clearly alleges that defendant furnished false information, she does not

allege, at least in this cause of action, that defendant did so with the wilful intent to injure

plaintiff.  Moreover, plaintiff does not assert, and provides no basis upon which to infer, that

defendant's alleged conduct interfered with any contract plaintiff may have had with a third

party, or with any pre-existing economic relationship plaintiff may have had with one or more of

the insurers that later provided a disfavorable quote.  The failure of plaintiff to allege that she

had any pre-existing contractual or economic relationship that was disrupted by defendant's

conduct, or that defendant acted with malice to disrupt such relationship, requires the finding that

plaintiff fails to state a claim for "Tortious Interference with Credit Expectancy."

### b. Defamation

In her fourth cause of action, plaintiff alleges, without citation to authority, that Allstate

"furnished [a] defamatory statement to credit reporting agencies about plaintiff that she had filed

two fire loss claims in the year of 2005," and that such "inaccurate information had and

1    continues to be a substantial factor in precluding plaintiff from receiving the most favorable rate

2    in buying insurance," as demonstrated by the reviews of plaintiff's credit history by "Farmers,

3    Arrowhead Clarendon, California State Automobile Association and AIG Homeowners

4    Insurance Program, et al."  SAC, at ¶ 29.  Plaintiff further alleges that "Allstate intended to cause

5    harm to plaintiff's credit rating and credit worthiness and it actually harmed." *Id.*

6         The requirements for stating a claim of defamation by libel are set forth in California

7    Civil Code Section 45.  "Libel is a false and unprivileged publication by writing . . . which

8    exposes any person to hatred, contempt, ridicule, or obloquy, or which causes him to be shunned

9    or avoided, or which has a tendency to injure him in his occupation."  Cal. Civ. Code § 45.

10   "[T]o survive a motion to dismiss on a defamation claim, a plaintiff must allege:  1) a defendant;

11   2) intentionally published a statement of fact; 3) that is false; 4) unprivileged; and 5) has a

12   natural tendency to injure (libel per se) or causes special damages."  *Steinmetz v. General Elec.*

13   *Co.*, ___ F. Supp. ___,  2009 WL 2058792, 5 (S.D. Cal., July 13, 2009).  Plaintiff must also

14   prove, pursuant to 15 U.S.C. § 1681(e), "that the information was 'false' and 'furnished with

15   malice or willful intent to injure.'"  *Gorman*, 552 F.3d at 1028; *Steinmetz,* 2009 WL 2058792, 5

16   ("unless a plaintiff alleges a defendant acted with 'malice or willful intent to injure,' a state law

17   defamation claim based on credit reporting activities is expressly preempted by the FCRA").

18   The appropriate standard for "malice" requires a showing that the publication was made with

19   knowledge that it was false or with reckless disregard of its truth, the latter supported by a

20   showing that defendant in fact entertained serious doubts as to the truth of the publication, rather

21   than having had a good faith reason for believing the truth of the publication.  *Gorman*, 552 F.3d

22   at 1028, 1027 (citations omitted).

23        Plaintiff has met, though sketchily, these requirements for stating a *prima facie*

24   defamation claim against Allstate.  Plaintiff alleges that Allstate intentionally reported to a CRA

25   that plaintiff filed two, rather than one, fire loss claims in 2005; that this information was false

26   (and, implicitly, unprivileged); and that this publication caused special damages to plaintiff in

1  the form of an increased premium by Allstate, and poorer rates offered by other insurers than

2  would have been offered had Allstate's publication been accurate.  Plaintiff further alleges that

3  "Allstate intended to cause harm to plaintiff's credit rating and credit worthiness," SAC, ¶ 29, an

4  allegation implicitly buttressed by Allstate's refusal to correct its report after being informed by

5  the CRA of plaintiff's dispute.

6       Accordingly, the court finds that plaintiff has stated a *prima facie* claim for defamation

7  against Allstate, pursuant to California common law and Section 1681(e) of the FCRA.

8       c.  "Intentional Infliction of Emotional Distress"

9       In her sixth cause of action, plaintiff alleges that Allstate intentionally furnished false

10  information to a CRA, resulting in a "highly offensive" "intrusion upon the plaintiff's private

11  affairs," and causing plaintiff "deep humiliation, embarrassment, anguish, indignity, and anger

12  along with serious financial and pecuniary harm arising from monetary losses relating to credit

13  denials, excessive rate and out-of-pocket expenses including but not limited to, local or long

14  distance telephone calls, postage, faxing and other related costs."  SAC, at ¶ 37.

15       To state a *prima facie* claim for intentional infliction of emotional distress, a plaintiff

16  must allege:  "(1) outrageous conduct by the defendant, (2) intention to cause or reckless

17  disregard of the probability of causing emotional distress, (3) severe emotional suffering and (4)

18  actual and proximate causation of the emotional distress." *Cole v. Fair Oaks Fire Dept.*, 43

19  Cal.3d 148, 155, n. 7 (1987) (citing *Agarwal v. Johnson*, 25 Cal.3d 932 (1979)).  Significantly,

20  this tort imposes liability for "conduct exceeding all bounds usually tolerated by a decent

21  society, of a nature which is especially calculated to cause, and does cause, mental distress. . . .

22  Behavior may be considered outrageous if a defendant (1) abuses a relation or position which

23  gives him power to damage the plaintiff's interest; (2) knows the plaintiff is susceptible to

24  injuries through mental distress; or (3) acts intentionally or unreasonably with the recognition

25  that the acts are likely to result in illness through mental distress."  *Id.* (citations and internal

26  quotations omitted).

1    Plaintiff's allegations fail to meet the high threshold required for making this claim.

2    The allegation that Allstate falsely reported that plaintiff made two, rather than one, fire loss

3    claims in 2005, cannot reasonably be described as "outrageous" conduct.  The cases cited by

4    defendant underscore this conclusion.[23]  Moreover, plaintiff's general allegations of emotional

5    distress and financial loss do not, on their face, rise to the required level.  "Severe emotional

6    distress" in this context "means substantial or enduring as distinguished from trivial or

7    transitory.  Severe emotional distress means, then, emotional distress of such substantial quantity

8    or enduring quality that no reasonable man in a civilized society should be expected to endure

9    it."  *Fletcher v. Western Nat'l Life Ins. Co.*, 10 Cal.App.3d 376, 397 (4th Dist. 1970).

10    The court concludes, therefore, that plaintiff fails to state a common law claim for

11    intentional infliction of emotional distress.

12    D.    PLAINTIFF SHOULD BE DIRECTED TO FILE A THIRD AMENDED
        COMPLAINT

13

14    In summary, this court finds that plaintiff's proposed Second Amended Complaint sets

15    forth the elements for stating *prima facie* claims pursuant to 15 U.S.C. § 1681s-2(b), Cal. Civ.

16    Code § 1785.25(a), Cal. Bus. & Prof. Code § 17200, and Cal. Civ. Code § 45.  For this reason –

17    and the lack of persuasive evidence demonstrating undue delay, bad faith, futility of amendment

18    or prejudice to defendant, *see Foman,* 371 U.S. at 182 – plaintiff should be granted leave to file

19

20    [23] As set forth by defendant:  "*See, e.g., Lee v. Travelers Companies*, 205 Cal. App. 3d
        691, 694-95 (1988) (upholding demurrer to IIED claim based on insurer's refusal to settle and

21    delay in payment); *Taylor v. California State Auto. Ass'n Inter-Ins. Bureau*, 194 Cal. App. 3d
        1214, 1223 (1987) (alleged malicious withholding of policy benefits not  "outrageous" conduct

22    as a matter of law); *Schlauch v. Hartford Accid. & Indem. Co.*, 146 Cal. App. 3d 926, 936 (1983)
        (refusal to accept settlement offer and violation of statutory claim-handling duties not

23    "outrageous" conduct as a matter of law); *Ricard v. Pacific Indem. Co.*, 132 Cal. App. 3d 886,
        895 (1982) (upholding IIED demurrer where disability insurer allegedly refused to pay or

24    properly investigate claim); *Soto v. Royal Globe Ins. Co.*, 184 Cal. App. 3d 420, 432 (1986)
        (wrongful withholding of policy benefits not actionable as IIED); *Everfield v. State Comp. Ins.

25    Fund*, 115 Cal. App. 3d 15, 20-21 (1981) (no IIED liability as a matter of law where insurer
        allegedly violated statutory duties, delayed payment, and changed amount paid)."

26    Dckt. No. 24, at 18.

her proposed Second Amended Complaint.  However, as set forth herein, articulation of these claims requires further amendment of plaintiff's pleading.  *See Noll v. Carlson*, 809 F.2d 1446, 1448 (9th Cir.1987) (leave to amend should be liberally granted to *pro se* litigants unless it is clear that the deficiencies of the complaint cannot be cured by amendment).  Accordingly, to pursue this action, plaintiff must file a Third Amended Complaint consistent with these findings and recommendations.

CONCLUSION

For the foregoing reasons, IT IS HEREBY ORDERED that:

1.  Plaintiff's request for an extension of time, Dckt. No. 17, within which to file her opposition to defendant's motion to dismiss is granted and her opposition brief is deemed timely filed;

2.  The portion of this court's order filed October 2, 2008, Dckt. No. 15, which states that "Plaintiff's amended complaint will therefore be disregarded," is vacated; and

3.   The operative complaint in evaluating defendant's motion to dismiss, Dckt. No. 13, and plaintiff's opposition thereto, Dckt. No. 23, is plaintiff's First Amended Complaint, Dckt. No. 14.

Further, IT IS HEREBY RECOMMENDED that:

1.  Defendant's Motion to Dismiss, Dckt. No. 13, be granted;

2.  Plaintiff's First Amended Complaint be dismissed with leave to amend;

3.  Plaintiff's motion for leave to file a Second Amended Complaint, Dckt. No. 22, be granted in part and denied in part, and the Clerk of Court be directed to file the complaint forthwith, subject to the limitations noted herein; and

4.  Plaintiff be directed to file, within 30 days of the filing date of the district judge's order, a Third Amended Complaint setting forth only those claims identified herein, without the addition of any new claims.

////

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within ten days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Failure to file objections within the specified time may waive the right to appeal the District Court's order. *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

DATED:  September 22, 2009.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE